EGGERMAN INVESTMENT COMPANY, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 79013. Promulgated December 28, 1937.

Ray L. Johnson, Esq., for the petitioner.
H. D. Thomas, Esq., for the respondent.

OPINION.

DISNEY: This proceeding involves the redetermination of a deficiency of $4,981.03 in income tax for 1932. The question presented for decision is whether the respondent erred in taxing petitioner on the sum of $32,079.27 as profit realized on repossession of certain real property. The petitioner alleges in the alternative that the value of improvements made on the property by the purchaser does not constitute gain. Substantially all of the facts were stipulated.

In 1929 the petitioner, a Washington corporation, sold a lot 108 feet by 120 feet, improved by a two-story building of brick and wooden construction, used as a garage, for the sum of $150,000, payable as follows: $25,000 cash; $83,500 in installments over a period of five years with interest at the rate of 6 percent per annum; and the remainder by assuming an outstanding mortgage of $41,500 on the property. The property had cost $96,311.33, including the mortgage of $41,500. The parties reduced the selling price to $142,700 by adjustments made for commissions, etc., and made a corresponding reduction in the initial payment.

The contract of sale provided for the assumption by the buyer of all taxes and assessments that might thereafter as between grantor and grantee become a lien on the premises and all hazards of damage to or destruction of any improvements then or thereafter erected on the property, and for the retention of legal title by the seller until the purchase price had been paid in full. A deed to the property was executed by the petitioner and placed in escrow for delivery to the buyer upon payment of the balance of the purchase

price. The buyer immediately entered into possession of the property and remained in possession until July 26, 1932.

The petitioner, which filed its income tax returns on the cash basis, elected to, and did, return the profit of $46,388.67 realized on the sale on the installment basis. The gain, aggregating $17,285.73, returned in 1929 and 1930, was based upon payments of $17,700 and $20,010, respectively received in those years on the purchase price of the property, upon a percentage of profit of 45.8386 percent.

On November 2, 1931, the petitioner, in accordance with a provision of the contract of sale, joined in the execution of a mortgage on the property in the sum of $34,000, and the prior existing mortgage was paid and canceled.

The failure of the buyer to make certain installment payments when due resulted in the termination of the contract of sale by an agreement executed on July 26, 1932. By provisions of the contract the buyer agreed:

(1) To give the petitioner a note for $2,055 (of which $1,500, plus interest of $23.25, was paid in 1932, and $555 in 1933).

(2) To pay delinquent taxes and overdue installment assessments against the property in the respective amounts of $1,104.26 and $1,110.58.

(3) To pay the petitioner $40,000 in installments as damages agreed to have been sustained by the petitioner because of the buyer's failure to carry out the sales contract, with the proviso, however, that if the buyer did not default under the agreement, the obligation would be deemed to have been fully discharged when the sum of $17,500 had been paid. The sum of $1,250 was paid in 1932 under this agreement and the remaining installments were met when due.

(4) To give the petitioner a quitclaim deed to the property (which was done).

And the petitioner agreed:

(1) To assume the mortgage indebtedness against the property then amounting to $31,900 and cancel the unpaid installments of $63,490.

(2) To pay the second half of 1931 tax assessment against the property in the amount of $1,104.27.

(3) To pay local improvement assessments made against the property prior thereto in the amount of $31,311.14, none of which was delinquent on July 26, 1932.

The provisions of this contract were substantially carried out.

Had the contract of sale been carried out in accordance with its terms, the taxable profit on the amount due thereunder on July 26, 1932, would have been $29,102.94.

The real property in question had a fair market value on July 26, 1932, of $60,000 (inclusive of a mortgage of $31,900).

In its return for 1932 the petitioner reported no taxable gain and did not claim a deductible loss arising from the agreement of July 26, 1932. The respondent determined that repossession of the property resulted in a profit to petitioner of $32,079.27, computed as fol-

lows, under the provisions of article 353 of Regulations 77, relating to cases in which the seller retained title in the sale:

| | | |
|---|---:|---:|
| Cash paid in 1929 on purchase price | | $17,700.00 |
| Cash paid in 1930 on purchase price | | 20,010.00 |
| Mortgage on property assumed by purchaser | $41,500.00 | |
| Balance due on cancellation of contract | 31,900.00 | |
| Reduction of mortgage indebtedness | | 9,600.00 |
| Payments made and acknowledged in agreement of July 26, 1932 | | 2,055.00 |
| Value of improvements to property made by purchaser | | 1,842.44 |
| Total | | 51,207.44 |
| Less profit returned on installment basis, 1929 | $8,113.43 | |
| Profit reported on installment basis, 1930 | 9,172.30 | |
| Depreciation sustained on property while in the hands of the purchaser at 3% on cost of building, $17,139.00; for 1929, 1930, 1931 and 7 months of 1932 | 1,842.44 | |
| Total | | 19,128.17 |
| Net profit | | 32,079.27 |

The improvements made on the property by the purchaser were not separable from the existing building.

The major difference between the parties is whether the gain realized or loss sustained, if any, when the petitioner repossessed the property, should be computed under article 353 of Regulations 77, which we applied in *Boca Ratone Co.*, 31 B. T. A. 1060, a case involving parallel facts, or section 44 (d) of the Revenue Act of 1932,[1] which the Circuit Court of Appeals for the Third Circuit held to be applicable in reversing our decision. *Boca Ratone Co.* v. *Commissioner*, 86 Fed. (2d) 9. The petitioner asks us to follow the court's decision and the respondent relies upon our decision. We now agree with the reasoning of the court and conclude that gain or loss on repossession of property sold and returned for tax purposes on the installment basis, as here, should be computed under the provisions of section 44 (d). The parties agree that the sale was one on installments.

There remains the question of the extent of petitioner's gain or

---

[1] SEC. 44. (d) GAIN OR LOSS UPON DISPOSITION OF INSTALLMENT OBLIGATIONS.—If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and (1) in the case of satisfaction at other than face value or a sale or exchange—the amount realized, or (2) in case of a distribution, transmission, or disposition otherwise than by sale or exchange—the fair market value of the obligation at the time of such distribution, transmission, or disposition. The basis of the obligation shall be the excess of the face value of the obligation over an amount equal to the income which would be returnable were the obligation satisfied in full. * * *

loss under the applicable statute. The petitioner contends for a deductible loss of $39,147.42, computed in the following manner:

| | Amount realized |
|---|---|
| Fair market value of property | $40,000 |
| Note | 2,055 |
| Obligation of buyer | 17,500 |
| Total | 59,555 |
| Less: | |
|    Local assessments | $31,311.14 |
|    Taxes assumed | [1]1,104.22 |
|    Mortgage | 31,900.00 |
| | 64,315.36 |
| Loss | 4,760.36 |
| Basis of obligation | 34,387.06 |
| Excess of basis over amount realized | 39,147.42 |

[1] Correct amount $1,104.27.

We agree that the petitioner has correctly determined the basis of the obligation to be $34,387.06, a figure representing the difference between the gain of $29,102.94, which would have been returnable if the installment obligation had been satisfied in full, and $63,490, the face amount of the obligation. We also agree with the general idea of the petitioner that in determining "the amount realized" upon repossession, obligations assumed by it as a part of the agreement should be used to reduce the gross amount. Such objections as we have to the petitioner's computation relate to the value of the property repossessed and items excluded from the computation.

We think the valuation of the real estate at $40,000 claimed by the petitioner is too low. Two of its witnesses at the hearing testified to such a value on the basic date, but their testimony is contrary to other and more satisfactory evidence of record. One of the witnesses testified that property in the vicinity of the parcel in question decreased from 60 to 75 percent in value between 1929 and the middle of 1932. This indicates a value in 1932 of $60,000, based upon the selling price of $150,000 and the minimum reduction of 60 percent in values. The buyer placed a new mortgage on the property in November 1931, nine months before the property was repossessed, in the amount of $34,000, and there is no proof that the property was not encumbered at that time by the lien of $31,311.14 existing in July 1932 for local improvements. The original contract between the parties, entered into on February 26, 1929, referred to assessments under an ordinance numbered 50890, and obviously the $31,311.14 assessments were referred to. But even if some other assessment was referred to, it is plain that the mortgage was made subject to some amount of assessment obligation, and under such circumstances a

mortgage of $34,000 would indicate a much greater value upon the property than petitioners place upon it. Even without considering assessments, a mortgage of $34,000 indicates a value of much more than that amount, for the mortgage is made by an insurance company, and there is no indication in the record that it was not dealing at arm's length with the mortgagors. Such a mortgage is much more consistent with a valuation of $60,000 than with one of $40,000, which petitioner seems to consider approximately the value of the property. The recitations as to $40,000 in the contract of July 26, 1932, are in their nature self-serving and can not be accepted in the face of a $34,000 mortgage.

Indeed, these recitations are to the effect that the value of the property was approximately $40,000 less than the remaining obligations, which would mean a valuation of less than $23,490, since the unpaid installments were $63,490. It is thus apparent that there is no consistency between petitioner's valuations at the time of the contract and at time of trial. We conclude that the real property was on July 26, 1932, of a fair market value of $60,000.

The contract of July 26, 1932, having been substantially carried out, no question arises as to the value to petitioner of the obligations (to pay note, taxes, and assessments) which were resumed from the purchaser.

The gross amount realized should include, in addition to the note and obligation of the buyer and the real property repossessed of the fair market value of $60,000, the amount of $1,104.26 received for payment of delinquent taxes, and the amount of $1,110.58 for payment of an overdue installment assessment levied against the property. The taxes and assessment constituted a lien against the property. Payment of the amounts by the buyer as a part of the agreement relieved the petitioner of the obligations, and under the circumstances was constructive receipt by the petitioner.

Section 23 (c) of the Revenue Act of 1932 permits a taxpayer reporting on the cash basis to deduct local taxes paid within the taxable year and ordinarily assessments made for local improvements are capital items and become a part of the basis of the property when they accrue or are paid, as the case may be. However, the statute and rule governing such situations are not applicable here, where the problem is to determine "the amount realized" by the petitioner at the time of acquiring repossession of the property. The real estate was burdened with liens consisting of $31,311.14 for local improvements, $1,104.27 for taxes and $31,900 under an outstanding mortgage, all of which, totaling $64,315.41, the petitioner assumed as part of the consideration passing under the repossession agreement. The items fall within one classification. Their aggregate amount is reflected in the consideration paid by the petitioner, for

it is obvious that the purchaser would not have paid or agreed to pay the amounts it did if it had not been released from its liability to pay these charges. The amounts assumed by the petitioner constitute a part of the cost of reacquiring possession and should be deducted from the gross receipts to determine "the amount realized" within the meaning of section 44 (d). The petitioner sustained a deductible loss of $16,932.53, computed as follows:

Gross amount realized:

| | | |
|---|---|---|
| Real property | | $60,000.00 |
| Promises of buyer | | 21,769.84 |
| | | 81,769.84 |
| Obligations assumed by petitioner | | 64,315.41 |
| Amount realized by petitioner | | 17,454.43 |
| Basis of obligation: | | |
| Unpaid installments | $63,490.00 | |
| Unreported profit | 29,102.94 | |
| | | 34,387.06 |
| Deductible loss under 44 (d) | | 16,932.53 |

The conclusion reached by us renders it unnecessary to consider the alternative contention raised by the petitioner.

Reviewed by the Board.

*Decision will be entered under Rule 50.*